Buzby *v.* Roberts.

---

### CARRIE S. BUZBY et al.

#### *v.*

### SARAH ANN ROBERTS et al.

1. On reference in partition under rules 166 and 29, the master is not concluded by the admissions of the bill and answer, as to the answering defendant's rights in the premises.

2. A testatrix devised lands in trust for her son for life, "and at the time of my son's death it is my wish and will to leave all the property of all kinds to be equally divided among my nephews and nieces on my father's side *according to law.*"—*Held*, a grandniece, the daughter of a nephew dead at the time of making the will, is not entitled to any interest in the lands. *Outcalt* v. *Outcalt, 15 Stew. Eq. 500*, distinguished.

---

On bill for partition &c., and exceptions to master's report.

*Mr. Charles E. Hendrickson,* for the exceptants.

*Mr. Samuel A. Atkinson, contra.*

EMERY, V. C.

The question in this case arises upon exceptions to the report of a special master in proceedings for partition. The master to whom it was referred to report on the right, title and interest of the parties in the premises of which partition was sought, has reported that two of the defendants, Mary C. Rue and John R. Rue, her husband, are not seized of or entitled to any part of the premises or interest therein. In the bill for partition, which was filed by two of the tenants in common, the defendant Mary C. Rue was alleged to be entitled to an undivided eleventh interest in the lands, and the interests of the other parties to the suit, including the complainant's own interest, were also specifically stated, being based upon the theory that the defendant Mary C. Rue was entitled to such one-eleventh interest. This defendant and her husband answered, admitting the allegations of the complainants' bill and asserting the right of Mary C. Rue to a one-eleventh interest. No other answers were put in except the usual formal answer of the clerk as guardian *ad litem* for five infant defendants, and a decree *pro confesso* was taken against all the other defendants. The order of reference was in the form directed by rule 166, that on a decree *pro confesso* taken on a bill for partition, there shall be a reference to a special master to report as to the rights of the respective parties in the premises. The master reported that the defendants Mary C. Rue and her husband were not entitled to any interest in the premises, and in reference to the interests of the other parties to the suit other than the infants and including the complainant, reported that their respective interests were greater than alleged in the bill; this increase occurring by reason of the addition of the alleged one-eleventh of Mary C. Rue to the other shares. After the report of the master, which also reported that a partition was impracticable and that a sale was necessary, and after the exceptions to the report, a decree for sale of the premises was made by

the consent of the exceptants, reserving decision as to the interests of the parties, and directing payment into court of the money arising from the sale. The question therefore practically arises as upon application for a decree of distribution of the proceeds of sale. Counsel for the exceptants suggests the point, that in view of the admissions of the bill, that Mary C. Rue was entitled to an interest in the lands, and in view of the fact that her answer accepted this statement as true, report or decree can regularly be made on this bill that she did not have any interest in the lands. But it is clear that the statement by one tenant in common in his bill for partition of the interests of one defendant cannot conclude the other defendants, or perhaps even himself. Even by decree *pro confesso* under the rules, a defendant who does not answer is entitled to the protection of the master's report upon the rights of the parties, and the master must report the rights of the parties as they really are, irrespective of the admissions of the parties. It may be that a defendant whose rights are admitted by the bill and set up by answer, might, on the coming in of such adverse report, apply for a stay of the partition proceedings until his title could be tried at law, but where, as here, the partition proceedings are allowed to continue, and a decree for sale is made by consent of the exceptant and the money paid into court, there can be no question as to the right of the court, in disposing of the proceeds of sale, to decide upon the real rights of the parties. Upon the merits of the case, the precise question is whether the defendant Mary C. Rue, a grandniece of the testatrix, is entitled to an interest in the premises under a devise made to the nephews and nieces of the testatrix. It is claimed that the language of the will is such as to show that it was the intention of the testatrix to include the children of deceased nephews or nieces within the description. Sarah Ann Livesey, the testatrix, died seized of the premises in question, seven lots of land in Burlington county, five of which were devised to her by her father, Moses Livesey. At the date of her will and of her death, she had one son, Charles Moore, a feeble-minded person, and the disposition of her property was as follows:

"My will and wish is, and I leave my property, both real and personal, to my son Charles Moore as long as he lives, the said estate both real and personal I leave in charge of my nephew J. Stokes Coles and Abbie S. Buzby, as trustees of all my property and they to take full charge of my son Charles, and to see that he is well cared for as long as he lives, and at the time of my son's death it is my wish and will to leave all my property of all kinds to be equally divided among my nephews and nieces on my father's side according to law."

This son of testatrix died in 1893, and the question now arises as to the disposition of the property after his death.

This will was dated December 14th, 1882, and at this time one of the testatrix's nephews and one of her nieces were dead, each leaving children. Mary C. Rue, the exceptant, is the only child of Anthony Cuthbert, a nephew of testatrix, who died on July 7th, 1882, about five months before the making of the will. Hope Moore, a niece of testatrix, was also dead at the date of the will, but the precise time of her death does not appear. She left two children, Hannah Moore and Stacy Moore, who were not made defendants, but as to whom the master also reported that they had no rights in the land. Ten nephews and nieces survived the testatrix, who died on October 8th, 1883, and between the date of testatrix's death and her son's death in 1893, some of the nephews and nieces living at testatrix's death, died leaving heirs or devisees, who were made parties to the suit as succeeding to their respective interests. There is no evidence whether the testatrix at the time of making the will knew of the death of her nephew, Anthony Cuthbert, or of her niece, Hope Moore. The only evidence from which any inference at all in any direction is to be drawn, is the evidence of the defendant Mary C. Rue, that her father, Anthony Cuthbert, lived at Elesmere, in the adjoining county of Camden, and that her father and the testatrix were friendly; that she never knew of any trouble between them, and that her own relations with the testatrix were always friendly. As to the Moores there is no evidence whatever. As to the right of grandnephews and grandnieces to take under a devise to nephews and nieces, there can be no dispute as to the general rule that they do not take. No more liberal rule of inclusion could be applied to grandnieces and grandnephews than the rule applied to grandchildren claiming under a devise or

bequest to children, and as to these the rule is settled that the word " children " will not be construed to include grandchildren, unless there is something in the context to show that the testator intended to include them, or unless the devise or bequest to children will be inoperative unless construed to include grandchildren. *Feit's Executors* v. *Vanatta, 6 C. E. Gr. 84,* and cases cited ; *2 Jarm. Wills *152 (R. & T. ed. p. 697.)*

And in reference to devises of real estate I find the precise question decided in this state in a case not referred to on the argument. *Van Gieson* v. *Howard, 3 Halst. Ch. 462.* In this case the testator devised his real estate to his widow for life and after her death ordered that it be sold and the proceeds equally divided between his brothers' and sister's children and one G., in equal portions, share and share alike. The testator had one sister and three brothers. Two of his nephews and one of his nieces had died before the making of the will, leaving issue. It was held that the issue of such deceased nephews and niece were not entitled to share in the proceeds.

The claim of the grandniece in this present case to take the share her father would have taken had he survived testatrix, is based upon the contention that, by the direction of the will that at the time of the son's death all the property should be equally divided among her nephews and nieces on her father's side *according to law,* the testatrix intended that the provisions of the law relating to the descent of estates to brothers' and sisters' children should be applied. Under the statute of descent (*Rev. p. 297 § 2*), a grandnephew or grandniece, being the grandchild of a brother or sister of the whole blood whose parent had died, would inherit the share the parent would have taken. In the present case, the nephews and nieces on the father's side who were to take would be necessarily the children of brothers and sisters of the whole blood. Nephews and nieces on her mother's side and not on her father's could only be the children of her half-brothers and half-sisters, the issue of her mother's subsequent marriage. The contention is that unless this meaning and force is given to the words " according to law " they have no meaning whatever, and in the construction of the will must be altogether discarded. On

the other hand, it is claimed that, inasmuch as the will expressly
directs the division to be made between the nephews and nieces,
and directs the division to be equal between all the individuals
of the class so entitled, the addition of the words "according to
law" cannot control this express direction, even if the phrase be
otherwise inoperative. My view is that the grandniece is not
entitled to share in the division.

. The language of the will, as to the persons among whom the
estate is to be divided, is entirely operative and it is so clear in
its directions as to the persons who are to receive it, that no
qualifications of this devise should be made, by construction from
other parts of the will, unless it is apparent that the testatrix
intended such qualification. I cannot attribute such intention
to her by the mere addition of the words directing the division
to be between these parties "according to law." The expression
of an intention to substitute a child in the place of a deceased
parent as an object of the gift, must be some expression of the
testator, in the will itself, showing that this idea of substitution
could fairly be considered as within the testator's mind. In
every one of the cases on which counsel for exceptants relied, in
his very full brief, there was in the will some expression of the
testator which in itself indicated that this idea of substitution for
a deceased parent was in the testator's mind. Such cases were
*Outcalt* v. *Outcalt, 15 Stew. Eq. 500,* and the cases there referred
to. In *Outcalt* v. *Outcalt* the direction of the will was, that after
the death of testator's wife, the residue of his estate

"shall be divided among my several children, share and share alike, and in
the event of any of my said children dying before my wife and leaving issue
them surviving, then such issue shall be entitled to and receive the parent's
share, the same as the parent would receive were he or she living."

It was held that the children of a son who died in testator's
lifetime before the making of the will, were entitled to take
under this clause of substitution.

The rule laid down in the leading case of *Christopher* v. *Naylor,*
*1 Meriv. 320,* as to the expression in the will sufficient to indicate
the intention to substitute the children of persons dead at the

Buzby *v.* Roberts.

date of the will in place of the parents, was criticised. by Vice-Chancellor Malins in *Adams* v. *Adams, L. R. Eq. Cas. 246 (1872),* and by Sir George Jessel, in *Sibley's Trust, L. R. 5 Ch. Div. 494,* and a more liberal rule was adopted by these judges, and these latter cases are relied on by Chancellor Runyon in *Outcalt* v. *Outcalt, supra.* The later English cases, however, *In re Chinery, 39 Ch. Div. 614 (1887)*; *Groves* v. *Musther, 43 Ch. Div. 569 (Court of Appeals, 1890),* and *In re Wood (1894) 1 Ch. 381 (Court of Appeals),* approve the rule laid down in *Christopher* v. *Naylor,* and disapprove the criticisms of Vice-Chancellor Malins.

In the present case I am asked to decide that the testatrix, by the mere addition of the words "according to law" to the direction for division among her nephews and nieces, intended to incorporate as part of her will, and as a qualification of the devise, the provisions of the statute of descent, relating to the division of estates between the children and grandchildren of brothers and sisters of the whole blood. These qualifications of the express terms of the devise are so radical that the testatrix's intention to make them should be made manifest by some direction in the will itself showing that they were in her mind. With this view as to the effect of the direct devise, I would be inclined to hold that even if the words "according to law" could have no effect or application, they must be rejected as meaningless or superfluous rather than attribute this effect to them. But it is not clear that the words "according to law" do not have some application to the devises directed between the nephews and nieces. If construed to relate to the mode of division between them, and as meaning that the estate must be divided between them according to the manner in which the law divides estates between any equal owners, and thus reading to be equally divided among my nephews and nieces according to law, the words would have some effect; and in *Van Tilburgh* v. *Hollinshead, 1 McCart. 32 (1861),* Chancellor Green held that, by the direction of a testator that, after the death of his son, lands given to the son for life be divided among his surviving children "according to law" the testator meant a division according to the law in force at the time of the vesting of the estate.

As, therefore, these words "according to law" added to the devise, do not necessarily interfere with the equal division among the nephews and nieces, I should not feel at all justified in imputing to the testatrix the intention of using them for the purpose of qualifying the previous clear language of the will, and the report of the master excluding the grandniece, Mary C. Rue, and her husband, is confirmed.

As to the Moores, the other grandnephews and grandniece, they are not parties to the suit, and no adjudication should have been made as to their rights. They have no interest in the proceeds of sale, and there should be no attempt to bar any right they may claim in the lands by adjudication against them in this suit.

The exceptants are not injured by this declaration as to their rights, but the final decree should not confirm the master's report as to these persons not parties.

The master also has failed to make any report as to the rights of the infant defendants. They are excluded, however, from any right in the lands or proceeds, the share in which there might be claimed for them a contingent interest being reported by the master to belong to their parents absolutely, and no special report being made as to the infants' rights. The question as to whether these infants have not rights to be protected or expressly adjudicated, should be brought before the court again on application for distribution, as the will under which they claim has not been sent up with the evidence.